Goon, J.
This is an action of contract in which the plaintiff seeks to recover upon twenty coupons originally attached to bonds issued by the defendant.
The defendant in its answer states that the bonds to which said coupons were attached and the coupons were issued under an instrument entitled “Mortgage Indenture. Massachusetts Cities Realty Co. to Old Colony Trust Company”; that the rights of the holders of the coupons and the bonds are defined and limited by said indenture, as follows:—
*127 “ARTICLE X.
“ADDITIONAL COVENANTS'AND EIGHT OF ACTION.
“SECTION 2. All the bonds issued hereunder are subject to the condition that all rights of action thereon or in respect thereof, or on or in respect of the coupons thereto appertaining, are vested exclusivel yin the Trustees under this mortgage, and that no holder thereof, or of any coupon appertaining thereto, shall have any right to institute any action at law or in equity upon the said bonds, or any of the coupons, or growing out of any provision thereof or of this mortgage, or for the enforcement of this indenture, unless and until the Trustee shall refuse and neglect to institute proper proceedings within sixty (60) days after request by the holders of a majority in principal amount of the bonds then outstanding hereunder, other than bonds held by or for the benefit of the Company, filed with the Trustee with satisfactory indemnity and deposit of said bonds with the Trustee; provided, however, that if at any time the Company shall pay the interest or coupons with respect to some of the bonds and shall fail to pay the interest or coupons of like date of maturity with respect to other bonds upon presentation thereof, or, except in case of bonds purchased for the sinking-fund, or called for prior payment, shall pay the principal of some of said bonds, and shall fail to pay the principal of other bonds of like maturity on presentation thereof, the holders of such bonds with unpaid interest or unpaid coupons or of such unpaid bonds, as the case may be, may sue at law or in equity, anything in this mortgage, or the bonds, to the contrary notwithstanding; provided, further, that nothing in this section or elsewhere in this indenture shall affect or impair the obligation of the Company, which is unconditional and absolute, to pay, at the date of maturity therein expressed, the principal and interest of the bonds to the respective holders thereof at the time and place in the bonds expressed, or affect or impair the right, which is also absolute and unconditional, of such holders to enforce such payment by legal proceedings . or otherwise. Any suit or proceeding instituted by the Trustee shall be brought in its name as Trustee.” *128 that reference is made to said Mortgage Indenture in the said bonds for the rights and remedies of the holders thereof, and reference to the said bonds is made in the said coupons, and that the plaintiff is thus put on notice of the said Mortgage Indenture and is bound by the terms thereof; that the provisions of said Mortgage Indenture have not been fulfilled by the plaintiff and so he has no cause of action against the defendant.
The parties agreed that the court might find and the court found that the defendant issued coupon bonds under the Mortgage Indenture; that the plaintiff is a holder in due course of three of these bonds and of coupons originally attached thereto; that the coupons were duly presented for payment and payment refused; that the bonds have not been called for redemption; that there has been no request upon the Trustee to institute proceedings as provided in the Mortgage Indenture; that there has been no payment of the interest or coupons; that the plaintiff had no actual knowledge of the provisions of the Mortgage Indenture; that the recording of the Indenture in the Registry of Deeds did not charge the plaintiff with notice of its contents; that the coupons declared upon have matured, but the bonds to which they were originally attached have not matured.
The defendant filed the following request for ruling:—
“On all the law and the evidence the plaintiff is not entitled to recover in this action for the following reasons:
“1. By Article 10' of the mortgage indenture Massachusetts Cities Realty Company to Old Colony Trust Company dated January 2, 1923, all rights of action on the coupons sued upon are vested in the trustee exclusively, except upon the happening of a condition, which condition has not come to pass, or upon maturity of the bonds to which the coupons in suits were originally attached.
“2. The bonds to which the coupons sued upon were originally attached have not matured.” *129 which the court denied, and the ease comes before us upon the court’s denial of said request.
The question involved is whether the references in the bonds to the mortgage indenture subjects the bondholder to the terms of the indenture, and, if so, whether the indenture deprives the plaintiff of his right of action on the coupons against the defendant.
This is a case which evidences a low type of business morality, and justifies the existence of such legislation as the “Blue Sky Laws”. Like practices -in other lines of business caused legislation standardization, as in insurance contracts. The plaintiff sues on detachable interest coupons payable serially, not to any trustee, but to “bearer”. Each coupon shows on its face an unqualified promise to pay, subject only to a call for redemption. The bonds to which the coupons were originally attached are also payable to “bearer”. In the bowels of the bond is a reference to the indenture securing the bond, to which indenture the holder is referred, not with reference to any diminution of rights under a flat promise to pay, but as to his rights against the security. cf. Mayo v. Fitchburg & Leominster St. Ry., 269 Mass. 118. The bond further provides that registration of the bond “shall not affect negotiability of the coupons, which shall continue to be transferrable by delivery, and the payment of any coupon to the bearer thereof shall be a discharge of the Company.” If an investor, more cautious than the average, journeyed to headquarters and inspected the mortgage, he would learn that the plain promise to pay the bearer was dependent on the joint action of many others beside himself; that if insiders held a majority of the bonds the promise to him would not be as valuable as its terms indicated, and that he must produce indemnity. With his faith thus shaken, he would *130 be re-assured by a proviso that nothing in the indenture should impair the unconditional and absolute obligation of the company to pay the principal and interest at maturity, to the holder, or affect or impair his absolute and unconditional right to enforce such payment by legal proceedings. If the defendant’s position is sound there would seem to be a very considerable impairment of a right thus baldly expressed. While the cases go a long way in charging a party with notice, the question here, assuming the plaintiff is so chargeable, is — notice of what? Of a stipulation that he cannot sue, or of one that he can sue? If a corporation puts out to the public an equivocal statement, it ought in common justice to be held to the construction which serves the other party, not itself. That is the rule in insurance cases and it should obtain here.
Our decision is n accord with that in Brown v. Chapple Pub. Co., Ltd., App Div. No. 210419 (32-290) where many cases are collected in the opinion. This plaintiff is even more favorably situated than the plaintiff who prevailed in that ease.
The defendant’s argument rests on the assumption that the concluding part of article 10, naming both principal and interest, has no application until the principal is overdue. If that was intended, the language should have been more clearly restricted to the principal and the interest coupon falling due with the principal. We do not feel called upon to devise constructions of language which will let this defendant out. It is tolerably obvious that if what is in the indenture were on the bonds and coupons, sales would be few.
The question of notice by reference, and its extent, assuming now That the notice relates to more than the security to which it in terms refers (“the security and the rights *131 and remedies of the holder in regard thereto”) is only one aspect of the wider rule of integration of contracts. There is, in this connection, no warrant for a rule as to “notice” except as it serves to give effect to the mutual intent of the contracting parties tacit or expressed. Much confusion of thought results from the use of the single word “notice” to cover both cases concerning mutual assent, and oases where that element does not enter, as in taking notice of an agent’s authority. The function of the word varies with the situation, and “notice”, and therefore presumed mutual assent, might more readily be assumed in a single and localized situation, as in Charlestown &c Savings Bank v. Zeff, 275 Mass. 408. than in a situation such as is disclosed here, of the emission of a large number of coupon bonds put out for sale to the investing public, and having many indicia of being “couriers without luggage”. The rule about notice by reference involves an inquiry as to what and how much is brought in thereby, and for what purpose it is brought in, whether to explain or to contradict an immediate contract which is plain on its face. To say that a mere general reference brings in everything, no matter where or what, may' be so destructive of a plain intent that the principal contract, here the coupons, should be transferable without hindrance that the main intent of the parties, to be found objectively, will be thwarted, not aided. Too broadly applied, the supposed rule carries an encouragement to cheating. Our chain has three links. Another may have a dozen, with the last in California or Europe.
. If it is true that a business contract is to be interpreted “in accord with justice and common sense — as a business transaction entered into by practical men to accomplish an honest and straightforward end” Clark v. State Street Trust Co., 270 Mass. 140, 153 then there are times when the *132 law should consider whether strict adherence to a legal formula is not sanctioning opposite results.
The experience with “ticket oases” 1 Williston, Contracts, Rev. Ed. Sec. 90 B furnishes an interesting partial analogy.
Report dismissed.